UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HFGL LTD. and CNH CAPITAL EUROPE LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>ALEX LYON & SON SALES MANAGERS AND AUCTIONEERS, INC.,<br><br>Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>Civil Action No. 06-4746 (JEI/AMD)<br><br>**OPINION** |

**APPEARANCES:**

MOSES & SINGER LLP
By: Philippe Alain Zimmerman, Esq.
2200 Fletcher Avenue
Fort Lee, NJ 07024
Counsel for Plaintiffs

HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP
By: Matthew E. Moloshok, Esq.
Richard B. Honig, Esq.
One Gateway Center
Newark, NJ 07102-5386
and
NOTTINGHAM, ENGEL & KERR LLP
By: Richard L. Engel, Esq.
One Lincoln Center, Suite 600
Syracuse, New York 13202
Counsel for Defendant

**IRENAS**, Senior District Judge:

This dispute arises out of Defendant Alex Lyon & Son Sales Managers and Auctioneers, Inc.'s ("Lyon") sale at auction of construction equipment allegedly owned by Plaintiffs HFGL Ltd.

and CNH Capital Europe Ltd. (collectively "HFGL and CNH"). HFGL and CNH have moved for summary judgment, arguing, among other things, that pursuant to certain "hire purchase agreements" -- English leasing agreements -- governed by English law, they are the true owners of the construction equipment at issue. In support of their argument, HFGL and CNH submit an expert report by Professor Iwan Davies on the English law governing hire purchase agreements (the "Davies Report"). Lyon presently moves to strike the Davies Report.[1] For the reasons that follow, Lyon's Motion will be denied. The Court will issue an appropriate Order.[2]

**I.**

In 2005 and 2006, HFGL and CNH, both English corporations, entered into multiple hire purchase agreements with an English corporation, Thornycroft (1862) Ltd., and its affiliate, Cadman Contracts Ltd. (collectively "Thornycroft").[3] (Samson Aff. ¶ 5.) HFGL and CNH assert that under these agreements, HFGL and CNH agreed to lease construction equipment to Thornycroft, granting

---

[1] This opinion will only address Lyon's Motion to Strike the Expert Report. A separate opinion will decide HFGL and CNH's Motion for Summary Judgment.

[2] This Court has diversity jurisdiction under 28 U.S.C. § 1332. HFGL and CNH are incorporated in and have their principal place of business in England and Lyon is incorporated in and has its principal place of business in New York State. The amount in controversy is more than $75,000.

[3] Lyon also refers to this entity as Thornycroft 1862 Co. Ltd. (Lyon Aff. ¶ 9.)

Thornycroft the option to purchase the equipment for a fee at the conclusion of the lease. (Samson Aff. ¶ 8-9.) Most of the agreements contain a provision stating that they are governed by English law.[4] (Samson Aff. Ex. 1-9.) HFGL and CNH assert that, without their knowledge, Thornycroft smuggled certain equipment covered by these agreements (the "Equipment"), from England to the United States, where Lyon auctioned it. (Samson Aff. ¶ 14.) HFGL and CNH allege that under the hire purchase agreements, they are the true owners of the Equipment, and Lyon is liable for having converted their property.

Lyon asserts that HFGL and CNH's arrangement with Thornycroft should be properly seen as HFGL and CNH's providing Thornycroft's acquisition financing. (Lyon Aff. ¶ 19.) Lyon generally contests HFGL and CNH's claims of ownership. (Lyon Aff. ¶ 20.) Lyon also asserts that despite HFGL and CNH's apparent belief that the Equipment was in England, in actuality, certain pieces of the Equipment were already in the United States when HFGL and CNH executed the agreements concerning those items. (Lyon Aff. ¶ 21, 24, 26.) Moreover, one piece of Equipment was sold at auction prior to HFGL and CNH's signing an agreement regarding that particular item. (Lyon Aff. ¶ 21.)

In 2006, Thornycroft entered into the English law equivalent

---

[4] The Court cannot determine that all agreements contain this provision, because one of the agreements provided appears to be missing the page containing the pertinent legal provision. (Samson Aff. Ex. 10.) The Court has requested the missing page, but it has not been provided.

of bankruptcy, allegedly after its schemes to defraud financial institutions came to light. (Samson Aff. ¶ 12.) In the wake of Thornycroft's bankruptcy, HFGL and CNH discovered that the Equipment had been auctioned in the United States by Lyon. After first contacting Lyon and other auctioneers, HFGL and CNH initiated the instant action. (Samson Aff. ¶ 13-17.)

At issue in this Motion is the Davies Report, pertaining to the hire purchase agreements.[5] In the report, Professor Davies provides background on hire purchase contracts under English law. (Davies Report ¶ 5-8.) He then identifies the agreements in question as hire purchase agreements under English law. (Davies Report ¶ 9-10.) Finally, he provides interpretation of two clauses in the agreements under English law and states that, in his opinion, in light of the facts provided to him, title to the Equipment did not pass to Thornycroft, and HFGL and CNH are the true owners of the Equipment. (Davies Report ¶ 11-12.)

**II.**

The judicial determination of foreign law is governed by Federal Rule of Civil Procedure 44.1. It provides, in relevant part:

---

[5] Lyon does not challenge Davies's qualifications as an expert, thus it is unnecessary to recite his credentials at length. It is sufficient to note that he is a Professor in Law at the University of Wales Swansea, where he holds the Hodge Chair in Commercial Law, and is the author of numerous books and academic articles addressing personal property, including hire purchase and leasing law. (Davies Report Ex. 1.)

> In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

Fed. R. Civ. P. 44.1. Under this rule, the Court "may rely on its own research and any submissions from the parties when considering foreign law." *Nat'l Group for Commc'ns and Computers. Ltd., v. Lucent Techs. Int'l., Inc.*, 331 F. Supp. 2d 290, 294 (D.N.J. 2004). The Court may seek the aid of expert witnesses and consider material that would be inadmissible at trial. *Id; see also, Sidali v. I.N.S.*, 107 F.3d 191, 198 n.10 (3d Cir. 1997). Pursuant to Fed. R. Civ. P. 44.1, the Court may use an expert report to determine substantive foreign law, but not to assist the Court in determining facts. *ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc.*, 198 F. Supp. 2d 598, 623 (E.D.Pa 2002); *Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 177 F.R.D. 245, 264 (D.N.J. 1997), *rev'd on other grounds*, 179 F.R.D. 450 (D.N.J. 1998). However, it is within the Court's discretion to "reject even the uncontradicted conclusions of an expert witness and reach [its] own decisions on the basis of independent examination of foreign legal authorities." *Nat'l Group*, 331 F. Supp. 2d at 294.

**III.**

Lyon moves to strike the Davies Report, making the following

arguments: (1) the Davies Report is beyond the purview of Fed. R. Civ. P. 44.1, because it attempts to instruct the Court on how to make factual determinations; (2) the Davies Report should be excluded because it is unreliable; and (3) the Davies Report consists of inadmissible conclusions that do not satisfy the requirements set forth in Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The Court will address each in turn.

First, Lyon contends that the Davies Report is not properly brought before the Court under Fed. R. Civ. P. 44.1, because it improperly attempts to instruct the Court on how to make factual determinations. Under Rule 44.1, the Court may consider a foreign law expert report to aid its determination of foreign law, whether or not the report is admissible under the Federal Rules of Evidence. Fed. R. Civ. P. 44.1; *Nat'l Group*, 331 F. Supp. 2d at 294. The Davies Report has been submitted to aid the Court's determination of foreign law. The report describes the English law concerning hire purchase agreements and interprets provisions of the agreements in question in accordance with English law. (Davies Report ¶ 5-12.) This type of analysis is within the purview of Fed. R. Civ. P. 44.1. *Wheelings v. Seatrade Groningen, BV*, 516 F. Supp. 2d 488, 499-500 (E.D.Pa 2007) (relying on expert testimony interpreting the at-issue contract by applying Dutch law to specific contract provisions).

Additionally, the report makes limited reference to the facts of the case, stating merely that Professor Davies was "advised that the lessees/hirers, Thornycroft and CNH exported the hired goods from England to the United States, where they were sold at auction." (Davies Report ¶ 9.) The Court finds this report properly before it in accordance with Fed. R. Civ. P. Rule 44.1 for the purpose of aiding the Court's determination of foreign law. To the extent that the report seeks to guide the Court in determining the facts of this case, it will not be considered.[6] *See ID. Sec.*, 198 F. Supp. 2d at 623 (admitting an expert report to assist the court in determining substantive law, but not "to guide the court in determining the facts of th[e] case").

Second, Lyon argues, without providing supporting case law, that the Davies Report should be struck because it is unreliable. Specifically, Lyon argues that Davies' opinion that HFGL and CNH are the owners of the listed equipment under all of the hire purchase agreements is contradicted by his statement that under English law "one cannot transfer what one does not have." (Davies Report ¶ 8,12.) Lyon claims these statements are contradictory because in one of the hire purchase agreements, at the time the agreement was executed, neither party actually had

[6] Lyon also argues that the Davies Report should be disregarded because its legal analysis is flawed. To support this argument, Lyon points to contrary English legal authority cited in Lyon's brief in opposition to HFGL and CNH's Summary Judgment Motion. However, the supposedly contradictory authorities are of no moment, because the Court may consider conflicting authorities put forth by the parties in order to determine foreign law. *Nat'l Group,* 331 F. Supp. 2d at 294.

title to the equipment to transfer, due to Thornycroft's having sold the particular item almost a year previous to the execution of the agreement. (Def. Br. at 9.)

Lyon's argument is unpersuasive. The Court may consider all materials meeting the standards set in Fed. R. Civ. P. 44.1, and "give them whatever probative value [the Court] thinks they deserve." 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2444 (3d. ed.). In ruling not to strike the report, this Court "makes no judgment as to the weight, if any, [it] may give to this report under Rule 44.1." *Lithuanian Commerce*, 177 F.R.D. at 264. The purported unreliability of the report is not a basis to remove the report from the Court's consideration. Further, the report's purpose is to aid the Court's determination of foreign law, not to assist it in making factual determinations. Accordingly, Lyon's objection that the report makes a conclusion based on a flawed factual assumption is irrelevant.

Third, Lyon contends that the Davies Report should be struck because it contains inadmissible conclusions that do not satisfy the requirements set forth in Fed. R. Evid. 702 and the *Daubert* decision. The Davies Report, however, is provided to the Court for the purpose of aiding the Court's determination of English law under Fed. R. Civ. P. 44.1, not as factual report to be admitted into evidence. The "use of an expert report to assist

the [C]ourt in its determination of foreign law is entirely different from use of an expert report, pursuant to Rule 702, Fed.R.Evid., to aid the jury in determining the facts." *Lithuanian Commerce*, 177 F.R.D. at 264 (finding an expert report on foreign law could be presented to the judge to determine foreign law, but not to the jury to determine facts). Consequently, at this time, the Court need not determine whether the Davies Report would be admissible under Fed. R. Evid. 702 and the *Daubert* decision.

Accordingly, the Court concludes that it may properly consider the Davies Report pursuant to Fed. R. Civ. P. 44.1. Lyon's Motion to Strike Professor Davies' Expert Report will be denied.

**IV.**

For the reasons stated above, Lyon's Motion to Strike Professor Davies' Expert Report will be denied. The Court will issue an appropriate Order.

Dated: December 22, 2009

s/ Joseph E. Irenas
**JOSEPH E. IRENAS, S.U.S.D.J.**